

U.S. Department of Justice

United States Attorney
Eastern District of New York

NEM/ALK/RSB
F. #2017R00089

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 17, 2024

By ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Amador-Rios et al.
                Criminal Docket 18-398 (S-3) (RPK)

Dear Judge Kovner:

      The government submits this letter in advance of the defendant Josue Leiva's sentencing, which is scheduled for January 23, 2024 at 4:00 p.m. On July 14, 2023, Leiva pleaded guilty, pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), to Count One of the Third Superseding Indictment, which charged him with racketeering. As part of the agreed-upon pattern of racketeering activity, Leiva admitted to his participation in the murder of sixteen-year-old Julio Vasquez and the armed robbery of El Riconsito Catracho Grocery ("El Riconsito") in Queens, New York. For the reasons set forth below, the government recommends that the Court impose the agreed-upon sentence of 420 months' imprisonment followed by a period of five years supervised release.

I.    Background

      The defendant's conviction stems from crimes he committed as a member of La Mara Salvatrucha, also known as MS-13. MS-13 is a violent transnational criminal organization with members located throughout Long Island, Queens, and other parts of New York, as well as in other parts of the United States. Members and associates of MS-13 have engaged in acts of violence, including murder, attempted murder, robbery, and assault, as well as other criminal activity, including narcotics trafficking, extortion, witness tampering, and witness retaliation. MS-13 operates through chapters, or "cliques," throughout the United States, which report and funnel money to a central leadership. Gang membership is considered a lifetime commitment, with only rare exceptions that allow individuals to leave the gang. Clique members often carry out directives from regional, national and international MS-13 leaders, including orders to kill witnesses, rival gang members, and potential cooperating or defecting MS-13 members. MS-13 cliques assist each other in carrying out violent crimes, harboring fugitives, acquiring firearms, distributing narcotics and other criminal activity.

A.   The Defendant's Role in MS-13

Leiva joined the Centrales Locos Salvatruchas clique of MS-13 ("CLS") as a "chequeo," or low-level member in approximately 2016. He was promoted to "homeboy," or a full-fledged member, for murdering Julio Vasquez in May 2017, and was a "homeboy" when he participated in the January 2, 2018 robbery of El Riconsito. Leiva's residence was the meeting place after each of the armed robberies he and his co-conspirators committed in early 2018, and some of the clique guns were stored there, further evidencing his deep involvement in the gang.

B.   Murder of Julio Vasquez

On the night of May 16, 2017, the defendant and co-defendants Melvi Amador Rios ("Melvi") and Luis Rivas lured sixteen-year-old Julio Vasquez, a CLS "chequeo," to Alley Pond Park to murder him. Once inside the park, Leiva and Rivas stabbed Vasquez repeatedly in the back, torso and neck and then left his body there.

About five days later, on the morning of May 21, 2017, a bird watcher found Vasquez's decomposing body. An autopsy revealed that Vasquez suffered at least 34 sharp force injuries to his back and torso, which resulted in injuries to his left lung and liver. Vasquez also suffered numerous sharp force injuries to his neck, many of which were deep enough to cause slash marks on his vertebrae. The medical examiner observed that Vasquez's carotid artery—which is located deep in the neck, behind muscles—was completely severed. The medical examiner determined that the manner of Vasquez's death was a homicide caused by sharp force injuries to his neck and torso.

Melvi ordered Vasquez's murder because Vasquez had disobeyed Melvi's order to kill another CLS chequeo who had fallen into poor standing with CLS. Melvi chose Vasquez to carry out that murder because Vasquez was also in poor standing with the clique for a variety of reasons. Melvi purportedly intended to forgive Vasquez's transgressions if he carried out Melvi's order to murder the other CLS chequeo. Melvi gave Vasquez one week to carry out the murder, but Vasquez failed to do so. When Vasquez failed to meet the murder deadline, Melvi, Rivas and Leiva lured Vasquez to Alley Pond Park and murdered Vasquez.

Leiva boasted about his participation in the murder on multiple occasions. Leiva told Santos Amador Rios ("Santos"), Melvi's brother and fellow CLS member, that Leiva stabbed Vasquez over twenty times and that Vasquez had defecated on himself. Leiva also confessed to a friend that Melvi ordered Vasquez's murder because Vasquez had been arrested for a gun but then released and was thus suspected of cooperating; that Leiva and Rivas lured Vasquez into the park by telling Vasquez they were going to attack rival gang members; and that, after luring him into the park, Leiva and Rivas stabbed Vasquez repeatedly on his body and neck and, when he did not die, slit his throat. During the violent attack, Vasquez pleaded and told them they were wrong about his suspected cooperation. Unmoved, Leiva and Rivas stabbed Vasquez to death.

C.   Armed Robbery

Leiva also carried out an armed robbery of El Riconsito with other MS-13 members and associates on January 2, 2018. During the robbery, Leiva and another MS-13 member were armed with guns. Leiva, Santos and the other MS-13 member entered the store wearing black

gloves and ski-masks. Leiva and the other MS-13 member pointed their guns at the owner, who was sitting at the cash register. Santos went behind the counter and stole money from the register. During the robbery, a customer entered the store and Leiva grabbed the customer and held him at gun point. They stole between $1,000 to $2,000. After the robbery, they went back to Leiva's house and divided the money.

On January 8 and 12, 2018, members of MS-13 including Melvi, Santos, Rivas and Yan Carlos Ramirez robbed two other delis in Jamaica, Queens, at gun point. After each robbery they went back to Leiva's residence, where he lived with two other members of MS-13, and divided the money. Guns recovered from Leiva's residence months later appear to be guns used in the above-described robberies.

II. Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the Presentence Investigation Report ("PSR"), which finds the advisory Guidelines range is 360 months to life.[1] Specifically, the adjusted offense level for Racketeering Act 5B (Murder of Julio Vasquez) is 43, and the adjusted offense level for Racketeering Act 6 (Hobbs Act Robbery) is 25. PSR ¶¶ 73-86, The combined adjusted offense level is 43. PSR ¶ 90. With acceptance of responsibility, the defendant's offense level is decreased by two levels.[2] Accordingly, the total adjusted offense level is 41. PSR ¶ 93. As to the defendant's criminal history category, the government agrees that, under the Amendments to the Sentencing Guidelines which became effective on November 1, 2023, the defendant has fewer than six criminal history points and thus is no longer subject to the two additional status points for committing the instant offense while under a criminal justice sentence. See PSR ¶ 100 n.1; U.S.S.G. §4A1.1(e). Therefore, the defendant has three criminal history points, and his criminal history category is II. However, the Guidelines imprisonment range remains 360 months to life. See PSR ¶¶ 98-100 & n.1.

III. Discussion

For the reasons set forth below, the government respectfully requests that the Court impose the agreed-upon sentence of 420 months' imprisonment followed by a period of five years supervised release. Such a sentence is appropriate given the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the

---

[1] The PSR incorrectly states that the agreed-upon sentence of 420 months' imprisonment is below the advisory Guideline range. PSR ¶ 4. The government respectfully requests that the PSR be amended to state that the agree-upon sentence is within the advisory Guideline range.

[2] Because the defendant pleaded guilty after juror questionnaires had been completed and three days before in-person jury selection began, the government does not intend to move for an additional one-level reduction pursuant to Guideline § 3E1.1(b). The PSR correctly does not include the extra one-level reduction in its Guidelines calculation.

3

seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public.

Section 3553(a) requires sentencing courts to consider a number of factors in imposing sentence, including the nature and circumstances of the violation and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner. Sentencing courts must also consider the kinds of sentences available, the applicable Guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities.

Here, the agreed-upon sentence, which the defendant and the U.S. Probation Department urge the Court to impose as well, reflects the nature and circumstances of the offenses and the history and characteristics of the defendant, avoids unwarranted sentencing disparities, and promotes general and specific deterrence. See 18 U.S.C. § 3553(a). The defendant's crimes were horrific, senseless, and reflect his utter disregard for human life. The defendant, Melvi and Rivas lured Vasquez, a sixteen-year-old boy to Alley Pond Park where the defendant and Rivas savagely stabbed him while he pleaded for his life. Vasquez was nearly decapitated, and his body was left to rot. His mother and his siblings were left to worry about him for days until a birdwatcher happened upon his decomposing body.[3] Afterwards, the defendant bragged about his senseless violence and was promoted within the gang for his part in the murder.

The defendant's armed robbery was also terrifying for the victims. He held a store owner and a customer at gunpoint for his own selfish enrichment and created a serious risk that someone would be fatally injured. The victims live with lasting trauma even though the robbery occurred approximately six years ago. As one victim testified at trial: "it's really been very hard. It's hard for me. It's left me psychologically damaged to the point that when I see two or three guys passing by, I get afraid. I get scared." Tr. 617:20-23.

Although the defendant pleaded guilty shortly before trial, he has not demonstrated any remorse for the brutal murder of Vasquez, or for traumatizing the victims of the armed robbery he committed—both of which have had profound and lasting impact on the victims and their families and friends, as well as the many witnesses and community members who were touched by the violence. The agreed upon sentence is sufficient to bring a measure of justice to Julio Vasquez, his family and loved ones, and to the community the defendant and his confederates further tore apart and terrorized with years of needless violence. Likewise, imposition of the agreed upon sentences is needed to protect the community and as a significant deterrent, both as a sign to the community and the defendant that gang-related violence fueling violent turf wars, as well as brazen, brutal murders and robberies such as those he committed are not tolerated under the law. Individuals hoping to impress gang members and other racketeering enterprises by committing violence should know of the potential consequences. The allure of joining a notorious

---

[3] A victim impact statement provided by Vasquez's mother in connection with the sentencing of Melvi Amador Rios is enclosed under seal.

4

enterprise like MS-13—and committing violence on its behalf—should be outweighed by the prospect of a significant sentence.

IV. <u>Conclusion</u>

For the foregoing reasons, the government respectfully asks the Court to impose a term of imprisonment of 420 months to be followed by a period of five years supervised release.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Nadia E. Moore
Anna L. Karamigios
Raffaela S. Belizaire
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (RPK)
       Counsel for defendant (via ECF)

5